Rene Romero v. DIRECTV, Mr. Tager is here for the appellate and Mr. Hutchinson for the appellees and Mr. Tager, you can begin when you're ready. Thank you. The operative arbitration provision in this case states, DIRECTV and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to, claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. There can be no question that Romero's STELA claim falls within the broad scope of that arbitration provision and the district court did not hold otherwise. Instead, it read this all-encompassing language out of the provision based on its belief that the FAA applies only to agreements to arbitrate claims arising out of the contract containing the arbitration provision. Any dispute between DIRECTV and Romero should fall outside of the arbitration agreement? Within the arbitration. Within the arbitration agreement. Yes, Your Honor. What if a DIRECTV antenna falls on him and hits him on the head a year after he's subscribed? On somebody else's house. Would that require arbitration and a personal injury action? It would, Your Honor. A DIRECTV truck runs him over and squashes him. That's correct. They would all fall within the scope of the arbitration provision. Now, of course, that is not this case and let me say that the Eighth Circuit has confronted a very similar argument in a case called PARM, which I'll find the Well, I don't want to waste the time. Shouldn't there be a difference if you're talking about a contract between equals where they both agree that anything that comes up between us should be arbitrated and a contract like this, which is in a contract, I just want my TV, I just want to get the ACC network and Comcast won't give it to me. Isn't that a big difference? Well, I think the language has to be interpreted according to its terms. The Supreme Court has said that over and over and over again. And these terms are not ambiguous. If they were ambiguous, you would have to construe them in favor of arbitration. The Supreme Court said that too. But going back to my point, it's called PARM versus Bluestem Brands and the site is 898 F3rd 869 and the key material is on page 878. Is it cited in your brief? It is not, because the argument I think that Judge Martinez was articulating wasn't really advanced, at least not very directly. But the Eighth Circuit pretty much said we don't look at hypotheticals that have nothing to do with the actual claim in the case before us. We evaluate whether the claim before us is within the scope of the arbitration provision and then if it is, we enforce it. What about the Seventh Circuit's decision in Smith versus Steinkamp? The Seventh Circuit rejected an argument that a broadly written arbitration agreement could encompass claims that did not arise under the contract, and it says it would lead to absurd results. Well, first of all, the author of that decision, Judge Posner, came back in a subsequent decision and pretty much limited it down to its facts. That case is called Anderman, and he said this case was about trying to use an arbitration provision that was in one loan agreement to cover claims arising out of a second loan agreement as to which there was not an arbitration provision. When he had this second case that involved a single contract, he said we're going to apply the arbitration provision as written. And let me circle back now to the key point. This court over and over again has said broad arbitration provisions are fully enforceable. The Brown versus ITT case, which is, as we say in the brief, the foundational case, makes that crystal clear and rejects the very argument that the district court made here because the argument in that case was the only claim subject to arbitration. No matter what the arbitration clause says are claims that arise out of the contract, and this court in Brown flatly rejected that and said it's just another way of arguing that statutory claims are non-arbitrable, which the Supreme Court has time and time again held as not so. And then in subsequent cases, this court has said that if the clause is broad enough and it has cited Brown as an example, the claims will be covered. But even in the really abhorrent facts of Doe versus Princess Cruz line, this court said if the arbitration clause had said any and all claims between us instead of going on to, say, arising out of the employment agreement, if it had just put a period after between us, the claims of the plaintiff in that case would have been covered by the arbitration provision. And that employee who was a citizen of Russia, similarly not on equal bargaining position, if you will, with the employer, the court had no problem saying in that case that half of her claims were arbitrable and further that the rest would have been had the arbitration provision been as broad and unlimited as the arbitration provision. In this case, I want to take you back to a hypothetical you discussed earlier. Let's say in the case of the person who is at someone else's house and the DirecTV satellite fell on his head after his own contract had resolved, I think you suggested that somewhat reluctantly that that would probably fall within this arbitration agreement. Couldn't you also read the clause claims arising out of or relating to any aspect of the relationship between us to not include that kind of a claim that's totally unrelated to any relationship between the parties? Well, that one you could, but we have the key language is before that, which says all disputes and claims between us. And this is just one illustration of several non-exclusive claims that would be covered by that. So we have to answer the question that those claims are included. Now, whether we would choose to enforce the arbitration clause is another story. What do you mean you have to answer the question that those claims are included? Well, it would be nice if we could say no, no, they're not included. Don't worry about it. I have to answer candidly that they are included because of the breadth of the language of the clause. So you're saying that the limiting construction would not be one that DirecTV would advocate for? I don't think we could plausibly advocate for it given the breadth of the preamble to that section. But again, I think the Parham case is a good precedent for the proposition that you don't need to worry about a case that's not in front of you. The question is whether this case is much more clearly within the mainstream of the clause you're relying on. Clearly, it's related to an aspect of the relationship. After all, the information that Mr. Romero claims should not have been disclosed to our expert witness wouldn't have been in our possession but for the fact that he's a customer. So to distinguish some of the other cases this court has decided in the past, this claim could not be brought by a non-customer. You have to be a customer in order to bring this claim. So it is within the heartland of this arbitration provision, and hypotheticals about trucks or towers or any other kind of far-out claim really shouldn't influence how you interpret the clause in this case. I'd also like to point out that the district court's limitation of the clause to just claims arising out of the agreement is entirely irreconcilable with more than 50 years of Supreme Court precedent because at least since the early 1960s, the Supreme Court has addressed the FAA in connection with clauses that say arising out of or relating to the agreement. And the words relating to the agreement are not in Section 2 of the FAA either. So under the district court's reading of the FAA—I'll borrow from my rebuttal here. Under the district court's reading, all these cases involving claims relating to the agreement would have had to come out the other way. And to just cite a few because, again, this isn't in our brief. It's something that I was thinking about more in preparing. Prima Paint, which was decided in 1967, said that a claim for fraud in the inducement, which clearly can't arise out of the agreement, but a claim for fraud in the inducement must be submitted to arbitration because the clause said disputes arising out of or relating to an agreement is easily broad enough to encompass the claim for fraud in the inducement. And then other cases I would cite you to are Gilmer v. Interstate Lane in which the arbitration provision was actually an exchange application for a securities broker. It wasn't even in his employment agreement. And the Supreme Court still said that—so it couldn't have arisen out of his employment agreement. And the Supreme Court still said his ADEA claim was arbitrable. And then finally— Mr. Clay, you've reserved some time for rebuttal. You're way over your time. Yes, sir. Thank you. All right. Thank you, Your Honor. Mr. Hutchinson. I'd like to reserve two minutes, please. Excuse me? Oh, I'm just telling the clerk I'd like to reserve two minutes before I begin. Well, you don't get to reserve. I don't get to? No. Okay. All right. Sorry, Your Honor. May it please the Court, Daniel Hutchinson of Leif, Cabresa, Hyman & Bernstein for the Plaintiffs' Appellees. I'd like to start by discussing the dog that didn't bark. Although DIRECTV has the burden of proving that this dispute is subject to arbitration, in its briefing and in court today, counsel has not addressed two key points. One is that plaintiff's claims arise from DIRECTV's conduct in this litigation. DIRECTV has not cited a single case in any court anywhere compelling arbitration of a claim based on litigation conduct. Counsel is asking the court to do something unprecedented and that there's been no case so holding. Second, while it's undisputed that DIRECTV's arbitration clause must be interpreted under Maryland law, DIRECTV never addresses the objective standard of contract interpretation or Maryland's significant relationship test, which requires when examining arbitration clause that there be a significant relationship between the contract in which the arbitration clause is contained and the dispute. The same rule is— Well, let me ask you this now. Yes, Your Honor. When you look at the arbitration clause, it looks like the parties agreed to arbitrate everything imaginable. And when you look at our precedent, our precedent indicates that broadly drafted arbitration agreements like this one do not exceed the scope of the Federal Arbitration Act. That's what we said in Brown v. T&T. What do you have to say about that? Three parts to that, Your Honor. The clause here is different than Brown for three reasons, two factual, one legal. In examining the clause, the court needs to examine what is the contractual relationship, what does the language say, and what is the standard by which the court should interpret that language. Here, unlike Brown, it's a consumer contract. It's much more narrow in scope than an employment relationship, which involves an entire day. You're on the premises. There are a broad range of interactions that come across for an employment relationship, whereas this is only a consumer relationship for the payment of and the receipt of television services. That's the narrow scope. So whether or not that might be a useful public policy distinction in the eyes of some people, it doesn't seem to me that that's a distinction that's ever been drawn either in statute or by the Supreme Court. What basis would we have to draw that distinction? Well, under Maryland law and more broadly under the objective standard of contract interpretation, the standard is what a reasonable consumer would interpret the language to mean. And so if it's a consumer relationship, the reasonable person is the consumer for that relationship. Do you have a Maryland case applying that distinction between employment agreements and consumer agreements in arbitration? Well, the Maryland case we cited is a consumer case. In so ruling, the court necessarily looked at what the relationship was for the consumer relationship and found that the dispute at issue did not arise under the arbitration clause for the contract at issue there. Right, but did it say that there is a difference in how we ought to look at contracts between consumers and a business versus contracts between employees and a business? That case did not address that issue because it was a consumer contract, so there was no need to look more broadly. But if we look at the Supreme Court itself, counsel said that the Supreme Court dictates looking at the language of the contract. That's not exactly what the Supreme Court says. At first options, for example, the Supreme Court sets down the basic standard. The basic objective is to ensure that, quote, arbitration agreements like other contracts are enforced according to their terms and according to the intentions of the parties. And so here, because it is a consumer contract, necessarily you need to look at the intention of the parties, and the intention would be the reasonable consumer because that's the party to the contract, not an employee, not a business relationship. It's a consumer relationship, and that's well-rounded in Supreme Court precedent. How could you take—what intention would you draw from the language in this particular contract other than an intention to arbitrate, as it says, all disputes and claims between us? How do we get to a more narrow intention from that broad language? Well, this language doesn't just say, like some of the cases, Doe, for instance, said if the court would have stopped at all disputes, that may have been the end of it. But here it doesn't just say all disputes. It says all disputes, then it talks about claims that arise from or relate to the contractual relationship, and it talks about disputes related to advertising. A reasonable consumer is not going to see that language and think that it covers disputes that are not related to the contract at all. That's not what it says. It says the agreement to arbitrate is intended to be broadly interpreted relating to any aspect of the relationship between us. It says contract, tort, statute, fraud, misrepresentation, or any other legal theory, period. I don't know how you could get any broader than that. Well, we have cited, for example, how DIRECTV described it in its brief to the district court, and describing it to the district court, and that's not how it described it. The third step that you would go to is to look at what the relevant legal standard would be. It's the objective standard of contract interpretation. It's foreseeability under the Eleventh Circuit. It is not foreseeable to a reasonable consumer that you would have a dispute, that doesn't arise from the contract, that doesn't relate to the contract, but is instead related to litigation conduct and unrelated litigation, and that claim would fall under the provision that's here. As your honors have noted, based on DIRECTV's argument, there is no logical end to the coverage of their clause, and it's just not foreseeable to a consumer for a narrow consumer relationship for a television service that you would be subjecting yourself to every conceivable claim of any kind that had no relation to that at all. That's just not how the courts have looked at it. I would also like to— Well, the way the courts have—I mean, I'm looking at the cases that you cite in your brief that you rely on, all concern controversies arising out of the underlying contract itself. Do you have one case that involves a controversy that does not arise out of the underlying contract itself? I'm sorry, your honor. I think that, in fact, DIRECTV has not cited any cases that have a dispute that's been compelled to arbitration that doesn't arise out of the contract or the contractual relationship. That's a point that we've made, your honor. There are certainly cases that have held that there are claims that do not arise out of contract that are not subject to arbitration, and I think Doe v. Princess Cruise Lines provides an excellent example of that. In that case, there was an invasion of privacy claim based on the disclosure of the rape victim's personal information, her name, to intimidate and to embarrass her. An invasion of privacy claim is the common law analog to the Stella claim that's at issue here. What about Delray Beach Police and Firefighters Retirement Systems where we said there is nothing unusual about an arbitration clause that requires arbitration of all disputes between the parties to the agreement? We have enforced such a clause before because it evinced a clear intent to cover more than just those matters set forth in the contract. So, again, the way to look at it is to look at the contractual relationship, the language of the contract, and the standard. So there may be clauses, certainly, that are broadly worded and that can be enforced on a broad basis. How would you word this contract more? If you were DirecTV and trying to get covered what they're saying this contract covers, how would you edit the contract? What would you say to make it cover everything rather than the more limited set of claims that you're suggesting that the current contract covers? Certainly, the court in Wexler that we cited in our papers is a court that looked at the exact same language here. What that court said is that if you want a reasonable, objective consumer to think that claims that do not arise out of the contract or relate to the contract are covered, you need to be explicit in so saying. And so here, if DirecTV wanted to encompass claims that were not related to the contract, it should say, including claims that are not related to this contract, including claims that do not relate to your television service. What about all disputes and claims between us? Wouldn't that include claims not related to the contract? It's just not foreseeable to a reasonable consumer that those claims would be at issue. That's a different argument, though. Well, that's the standard by which we must look at it. We can't just look at the language in the abstract. We need to look at the standard through which you interpret it and the contractual relationship. It's part of a package by which you must analyze this. And so, again, if you had language in a type of contract that was not a consumer contract, if you are having a reasonable amount of compensation and you're in an employment relationship, employees can expect you to do all sorts of things, wear certain uniforms, come to work at a certain time, use certain language. But it wouldn't be reasonable to think that in a consumer relationship, you would expect a consumer to use certain language if you come into a store or wear a uniform to come into a consumer store. That's just not foreseeable for that type of contractual relationship. And so there are certain provisions that you would just not expect to have. If you want to include those, you need to be explicit, if nothing else. I guess what I'm asking is how could you be more explicit than saying all disputes and claims between us? Well, Wexler, again, is a case that addresses that. And Wexler, for example, says, no reasonable person would think that checking a box, accepting the terms and conditions necessary to obtain cell phone service, would obligate them to arbitrate literally every possible dispute he or she might have with the provider. Quote, if a company wishes to bind its consumers to something broader, it must take steps to secure something that a reasonable person would understand as an objective expression of his or her agreement. Do you have the contract language in Wexler in front of you? I don't have that in front of me. I'm sorry, in Wexler? Do you have the actual language that was issued in Wexler? It's the same language. It's the language, it's Wexler versus AT&T Corporation. Once AT&T purchased DirecTV, the arbitration clause were conformed, so they're exactly the same. So they are exactly the same. So it's exactly the same as the one here. What circuit is that case out of? That's a district court case, Your Honor. It's apples to apples and it deals with the same clause, but it's a district court case. District court in what circuit? In the Ninth Circuit, Your Honor. In the Eleventh Circuit? Ninth Circuit. Ninth Circuit? Yes, Your Honor. In what district? I'm sorry, I have to turn the page back to open. I'm sorry, it's the Eastern District in New York. There is another case in the Northern District. We're not bound by that, are we? I'm sorry, Your Honor. We're not bound by it? No, of course not, Your Honor. But that's persuasive authority dealing with the same clause here. And also, I'm sorry, just using the objective standard of contract interpretation. And what do we do if we have any doubts about the scope of arbitrable issues or any ambiguities? Shouldn't we resolve those in favor of arbitration? Supreme Court's said that for a long time. Yes, Your Honor, and in fact, that's the very standard that the district court here applied. The district court cites to that standard at page five of the order and faithfully applies that. The district court, however, found that there were not doubts about the scope, that it was not reasonable to interpret this in a way that would encompass this type of claim that's so far afield from the contract itself. There's some interesting theoretical arguments, I think, about the all disputes and claims breath, as in if a satellite just falls on someone's head. But how are the claims here not, at a minimum, relating to the relationship between the parties and the contract between the parties? And I guess not even the contract, but the relationship between the parties. Yes, Your Honor. The Eleventh Circuit and Griggs out of Maryland, applying Maryland law, both address this. And they say that when you're looking at the relationship, it must be more than an incidental relationship. If we look at relationship, it's a very broad concept. In some sense, I'm related to Your Honors in that if we go back far enough, we'll be a common ancestor. But if you ask whether I'm related to you, the answer would be no in common sense. Here, there is some degree of relationship here because they got the information for this person through a consumer relationship. But the claim itself is not related. It's related to the litigation conduct. The question is still whether it is foreseeable to a reasonable objective consumer. There's no logical connection between signing up for television service and having your personal information disclosed as a litigation tactic. Those are not related. And because those are not related, it doesn't qualify under the related to provision. It may not be justifiable. I don't know. But I'm not sure I see quite how they're not related in that the only reason that the company had that information was because of the customer relationship. Again, if we look at a case, for example, like Doe, the only reason that the employee was able to be raped on the cruise ship is because she was an employee. I mean, that was the reason she was there. But being an employee on a cruise ship and being raped and suffering claims because of that, there's no logical relationship between those two things. And so, again, there may be some relationship, but the question is whether it's just an incidental relationship, as was talked about in Doe or in Griggs and in Maryland, or it's a relationship that is tethered to the contract itself or the contractual relationship. And there's no relation between the contract and the contractual relationship here. And one way courts have talked about that is you could perform every duty under the contract and still have claims nonetheless. And so here, there were directly provided service. Mr. Romero paid for the service. And yet the claim still arose regardless of those contractual terms. All right. Thank you, Mr. Hutchinson. Thank you, Your Honors. We'll hear again from Mr. Tager. Thank you, Your Honor. I'll just try to respond to four points briefly. First, the attempted distinction of the Brown case, that is that somehow consumer cases are different from employer cases, employment cases, I think is not one that can be sustained under the case law. The Supreme Court's case in AT&T versus Concepcion, of course, involved a consumer contract that had the same language once again. And there was no suggestion by the plaintiffs, by the district court, by the Ninth Circuit, or by the Supreme Court that there was something improperly overbroad about AT&T's arbitration clause, which the courts presumed and the parties presumed would apply to a claim for false advertising that preceded the entry into the agreement. And when these customers went to the store, they alleged that they were lured into the store by a promise that the cell phones would be given to them for free in connection with their service plan when in fact they had to pay California sales tax on them. What about the relationship or the comparison that your friend at the other table has drawn between this case and Doe v. Princess Cruise Lines? Why isn't this allegedly illegal behavior comparable to the illegal behavior that the plaintiff in that case experienced? I mean, obviously setting aside the nature of the crimes, of course, but the fact that these people were customers, the argument, I think, is that the fact that these people were customers didn't mean that they could be subjected to this kind of treatment from DIRECTV. What's your response to that argument? Well, Doe is distinguishable in two respects. The first respect is that the arbitration clause was narrowed, as I mentioned before, if you look at the language. And this court said if you had put a period after all claims between us, these claims would have been arbitrable. And again, five out of the ten were sent to arbitration anyway because the court felt that they did arise out of the employment relationship. So that's distinction one. Distinction two is that this court said those things could have happened to a passenger. So my colleague was incorrect in suggesting that this case is just like that case. This court expressly said that it wouldn't be related to the employment agreement because those things could have happened to a passenger. Here, as I mentioned before, it isn't possible that there could have been a Stella claim but for the fact that Mr. Romero was a customer and DIRECTV had his information. I wanted to pick up also on the point that this was done in the context of litigation and there's no precedent for that ever happening. This is a red herring. If the information had been disclosed in some other way, for example, a data breach or a rogue employee or even intentionally, the same claim would exist. The fact that it happened, I think, more innocently in a sense by us giving it to our expert in order to defend ourselves in litigation, that doesn't create some kind of substantive difference that would warrant not construing the arbitration clause to cover the claim. Finally, just very briefly on the Wexler case, Judge Block in that case decided the case on the basis of contract formation. That is not the basis for the decision below. The court found that there was a valid contract and held that the claim was not within its scope. That matters because the presumption in favor of arbitrability doesn't apply to contract formation but does apply to scope. Also, the facts are quite distinguishable. That case involved a couple of wrong number of phone calls and text messages to a customer of a different AT&T company. So AT&T sought to compel arbitration under her cell phone agreement even though the claim was against the different part of the company with which she didn't have an agreement. So that difference isn't present here. This is the same customer – same company the claim is against as the company with which she has the agreement. Thank you, Your Honor. Thank you, Mr. Taggart and Mr. Hutchinson. And the next case is Neal Gordon.